UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| FUNNY 4 FUNDS, LLC. | ) | 3:19-CV-00439 (KAD) |
| --- | --- | --- |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TREEHOUSE COMEDY | ) | |
| PRODUCTIONS, LTD. and BRAD | ) | |
| AXELROD, | ) | |
| *Defendants*. | ) | APRIL 25, 2019 |

**RULING ON APPLICATION FOR PREJUDGMENT REMEDY**

Kari A. Dooley, United States District Judge

The Plaintiff, Funny 4 Funds, LLC, ("F4F") brings this action against the Defendants, Treehouse Comedy Productions, Ltd. ("Treehouse") and Brad Axelrod ("Axelrod") (collectively, the "Defendants"), alleging trademark infringement and related claims. Concurrent with the filing of the Complaint, F4F filed an application for prejudgment remedy seeking to attach or secure $100,000.00 as a reasonable estimate of its provable damages (the "Application"). The Court held a hearing on the Application on April 23, 2019. For the reasons set forth in this Order, the Application is GRANTED in part and DENIED in part.

**Factual Allegations and Procedural History**

F4F and Treehouse are competitors in the comedy show market. Each provides, with some variation, a soup to nuts comedy show for clients hoping to raise funds for a charity or other worthy cause. F4F typically charges a fee of $1,200.00 for its services, and it pays for the comics who appear and other costs associated with the event itself.

In September 2015, F4F and Treehouse embarked on a joint venture as means of expanding the F4F brand into Connecticut. F4F provided education and experience to Treehouse and Treehouse, in turn, began branding its comedy shows under both the Treehouse and F4F's then-

unregistered "FUNNY 4 FUNDS" mark. This was a Gentleman's Agreement not memorialized in writing. Thereafter, Treehouse began using a fusion logo, which combined the "FUNNY 4 FUNDS" mark and the Treehouse logo ("fusion logo"), in the marketing, advertising, and promotion of its fundraising comedy shows. It is not disputed that between September 2015 and June or July of 2018, Treehouse had unfettered access to and permission to use the F4F's name and mark. By agreement, Treehouse did not pay F4F any compensation for the use of the "FUNNY 4 FUNDS" mark. Both parties believed the relationship to be mutually beneficial.

On September 6, 2016, F4F submitted applications to the United States Patent and Trademark Office for the registration of two marks — "FUNNY 4 FUND$" and "FUNNY 4 FUNDS" (individually and collectively, the "Marks"). The registration of the Marks was completed on October 31, 2017. Thereafter, F4F began entering into written licensing agreements with individuals and groups, known as "branches," who wish to market and sell comedy shows under the F4F brand name and use the Marks. F4F has nine "branches" in several states. For each show marketed and sold using the Marks, F4F receives a licensing fee of $150.00 and "transaction" fees of approximately $180.00. F4F has no actual involvement in the staging of the shows arranged by the "branches."

After the registration of the Marks, Treehouse continued to use the Marks, with permission under the pre-existing Gentleman's Agreement, until approximately June or July 2018. At that time, F4F began discussing the terms of a potential licensing agreement with Treehouse whereby, presumably, Treehouse would become a "branch." The discussions broke down in October 2018 with no agreement being reached. F4F understood that Treehouse would thereafter begin phasing out its use of the fusion logo and the Marks and announce a new brand or marketing plan.

Nevertheless, Treehouse continued to use the Marks in its marketing and advertisement through the end of 2018. On January 8, 2019, F4F sent a cease and desist letter to Treehouse regarding the use of the Marks. Following receipt of that letter, Treehouse acknowledges that it continued using the Marks.

On March 26, 2019, F4F instituted this action against Treehouse and its president, Brad Axelrod. In the Complaint, F4F asserts claims for violations of the Lanham Act, trademark common law, and the Connecticut Unfair Trade Practices Act ("CUTPA"). With the filing of its complaint, F4F further filed the Application.

**Discussion**

### *Standard for Issuance of a Prejudgment Remedy*

In federal court, "throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Accordingly, this Court can issue a prejudgment remedy pursuant to Conn. Gen. Stat. §§ 52-278a, *et seq.* Under that statute,

> [a] prejudgment remedy is available upon a finding by the court that 'there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff. . . .'

*TES Franchising, LLC v. Feldman*, 286 Conn. 132, 137 (2008) (quoting Conn. Gen. Stat. § 52–278d(a)(1)). Probable cause requires less proof than that which is required for a fair preponderance of the evidence. *TES Franchising, LLC*, 286 Conn. at 137. "[P]robable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *Id.* (internal quotation marks omitted). Probable cause is "a flexible common sense standard" that

"does not demand that a belief be correct or more likely true than false." *Id.* (internal quotation marks omitted). In assessing a motion for a prejudgment remedy, "the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits." *Id.* (internal quotation marks omitted).

The party seeking a prejudgment remedy must establish that probable cause exists as to not only the validity of the plaintiff's claim but also "the amount of the remedy sought." *Id.* at 145–46. "[T]he party seeking the prejudgment remedy must present evidence that is sufficient to enable the court to determine the probable amount of the damages involved." *Id.* at 146 (internal quotation marks omitted). Likely damages need not be proven with mathematical precision, but the plaintiff must present sufficient evidence to permit a reasonable measure of his loss. *Id.* The court has discretion to order an attachment at or below the remedy sought after considering any defenses, counterclaims, or setoffs. *Conn. Light & Power Co. v. Gilmore*, 89 Conn. App. 164, 176 (2005), *cert. denied* 275 Conn. 906 (2005).

### *The Lanham Act and CUTPA*

"The Lanham Act prohibits the use in commerce, without consent, of any 'registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods,' in a way that is likely to cause confusion." *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999) (quoting 15 U.S.C. § 1114(1)(a)). F4F claims that the Defendants have violated several provisions of the Lanham Act and state law. For purposes of resolving the Application, the Court will focus on F4F's trademark infringement claim and CUTPA claim, which were the focus of the parties' discussions at the hearing on the Application.

To prevail on a trademark infringement action under the Lanham Act, 15 U.S.C. § 1114(1)(a), "a plaintiff must demonstrate that it has a valid mark entitled to protection and that the

4

defendant's use of it is likely to cause confusion." *Time, Inc.*, 173 F.3d at 117 (internal quotation marks omitted). In the Second Circuit, "courts must consider Judge Henry Friendly's *Polaroid* factors to decide whether a plaintiff has established a likelihood of confusion:

> (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will 'bridge the gap' [by moving into the defendant's product market] ; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers [or consumers in the relevant market].

*Id.* (quoting *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 390 (2d Cir.1995) and *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).

If the Court concludes that a Lanham Act violation has occurred, then CUTPA has been violated as well. *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F. Supp. 2d 497, 506 (D. Conn. 2009) ("a Lanham Act violation is a per se violation of CUTPA"); *Pfizer, Inc. v. Miles, Inc.,* 868 F. Supp. 437, 442 (D. Conn. 1994) ("A violation of the Lanham Act is a *per se* violation of CUTPA"); *Dial Corp. v. Manghnani Inv. Corp.*, 659 F. Supp. 1230, 1239 (D. Conn. 1987) ("To the extent defendants' actions violated the Lanham Act, they should be held automatically to violate CUTPA." [citation omitted]).

Here, Treehouse concedes that it continued to use the Marks after it received the cease and desist letter. The evidence is also sufficient to establish probable cause that the use occurred in connection with the production of between thirty and fifty comedy fundraising shows in Connecticut. The Court further finds probable cause that Treehouse's use of the fusion mark has led to actual confusion and is likely to lead to continued consumer confusion regarding whether F4F is involved in Treehouse's comedy shows that are marketed and promoted using the fusion mark or the Marks. The Court recognizes that a "naked license" defense is a significant issue to be litigated in this matter; *see Can't Stop Prods., Inc. v. Sixuvus, Ltd.,* 295 F. Supp. 3d 381, 392–

5

93 (S.D.N.Y. 2018) ("Under the naked licensing doctrine, a naked licensor may be estopped from challenging a breach of a licensing agreement, or even be deemed to have involuntarily abandoned the rights to the mark."); but the relatively low standard of probable cause, assessed against the testimony of William Simas, a member of F4F, and Axelrod at the hearing, warrants the issuance of a prejudgment remedy against Treehouse.

There is not probable cause to issue a prejudgment remedy as against defendant Axelrod individually. Although F4F alleges that Axelrod is the alter ego of Treehouse, it offers no evidence to support this allegation beyond Axelrod's position as the President and controlling principal of Treehouse. "While courts occasionally 'pierce the corporate veil' and ignore a [corporation's] separate legal status, they will do so only in extraordinary circumstances. . . ." *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 168 (2d Cir. 2015). The exacting standard for piercing the corporate veil in Connecticut has not been met by any standard of proof at this juncture.[1] *See generally Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 231–237 (2010) (discussing legal standard for piercing the corporate veil in Connecticut).

The Court next addresses the amount of the remedy sought. The Court disagrees with F4F that the remedy it seeks, $100,000.00, is established by the evidence presented. The parties themselves did not place any historical dollar value on Treehouse's use of the Marks, having considered the prior oral agreement to be mutually beneficial in and of itself. As a result, for almost three years, including a period of time post-registration of the Marks, Treehouse used the Marks with permission and without any remuneration to F4F. At present, F4F values the use of its Marks in the marketing of comedy shows at $150.00 per show, as reflected in the licensing agreements between F4F and its "branches." The $180.00 in transactions costs charged to F4F's

---

[1] In reaching this conclusion, the Court is no way precluding F4F from developing this theory of liability further during the course of this litigation.

"branches" cannot be considered in calculation of the value of the Marks because these costs constitute payment for services rendered or facilitated by F4F, not use of the Marks.

F4F's claim of entitlement to $1,200 per show is also rejected. This figure is a gross revenue figure for shows F4F actually arranges. F4F has not received these monies at any time from its licensee-branches or from Treehouse, when using the Marks with permission. It is simply not logical to say that these funds are a fair measure of damages to F4F when an individual or business uses the Marks without permission. Moreover, there was no evidence presented that F4F would have secured the business of arranging these shows had Treehouse not used the F4F Marks. But even if such an inference was permissible, the Court has no means of assessing the actual loss to F4F because this is a gross revenue amount from which costs would necessarily be deducted.

Finally, F4F's claim that the prejudgment remedy should include an award for attorney's fees or punitive damages is also unsubstantiated. The Court has the discretion to award reasonable attorney fees under the Lanham Act and CUTPA. In the context of the Lanham Act, however, attorney's fees are available to a prevailing party only in "exceptional cases"; 15 U.S.C. § 1117(a); and upon a showing of "evidence of fraud or bad faith"; *Twin Peaks Prods., Inc. v. Publ'ns Int'l Ltd.,* 996 F.2d 1366, 1383 (2d Cir. 1993) (internal quotation marks omitted). "In determining the reasonableness of attorney's fees under CUTPA, courts have generally used the lodestar method, in combination with the twelve factors articulated in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1971)."[2] *Emerald Inv., LLC v. Porter Bridge Loan Co.*, No. 3:05-cv-01598 (JCH), 2007 WL 1834507, at *4 (D. Conn. June 25, 2007). The scant evidence presented does not

---

[2] These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–119.

support a finding of probable cause as to attorney's fees under the Lanham Act or CUTPA at this stage of the proceeding.

Accordingly, for the reasons set forth in this ruling, the Court issues a prejudgment remedy in the amount of $6,000.00.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of April 2019.

                                         */s/ Kari A. Dooley*
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FUNNY 4 FUNDS, LLC. | ) | 3:19-CV-00439 (KAD) |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TREEHOUSE COMEDY | ) | |
| PRODUCTIONS, LTD. and BRAD | ) | |
| AXELROD, | ) | |
|     *Defendants*. | ) | APRIL 25, 2019 |

## ORDER FOR PREJUDGMENT REMEDY

Kari A. Dooley, United States District Judge

Whereas, the Plaintiff, Funny 4 Funds, LLC, (the "Plaintiff") in the above-captioned action has made an application for prejudgment remedy to attach the goods and/or estate of defendant TREEHOUSE COMEDY PRODUCTIONS, LTD. (the "Defendant"), and

Whereas, after due hearing at which the Plaintiff and the Defendant appeared and were fully heard, it is found that there is probable cause to sustain the validity of the Plaintiff's claim and that the application should be granted.

Now, therefore, it is hereby ORDERED that the Plaintiff may attach such goods and/or estate of the Defendant in the amount of six thousand dollars and zero cents ($6,000.00).

                                            */s/ Kari A. Dooley*
                                            KARI A. DOOLEY
                                            UNITED STATES DISTRICT JUDGE